COUNCIL OF COMMUTER ORGANIZA-
TIONS, et al., Plaintiffs-Appellants,

v.

METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,
Defendants-Appellees.

No. 858, Docket 81–7804.

United States Court of Appeals,
Second Circuit.

Argued April 8, 1982.

Decided June 16, 1982.

---

David M. Corwin, Brooklyn, N. Y. (William Hoppen, New York City, on the brief), for plaintiffs-appellants.

Francis P. Barron, New York City (David Boies and Cravath, Swaine & Moore, New York City, on the brief), for defendants-appellees Metropolitan Transp. Authority and related authorities and individuals.

Gaines Gwathmey, III, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., Richard N. Papper, Asst. U. S. Atty., New York City, on the brief), for federal defendants-appellees.

John G. Proudfit, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., and Shirley Siegel, Sol. Gen., Albany, N. Y., on the brief), for New York State defendants-appellees.

Marjorie Bornes, Asst. Corp. Counsel, New York City (Frederick A. O. Schwarz, Jr., Corp. Counsel, and Ronald E. Sternberg, Asst. Corp. Counsel, New York City, on the brief), for defendant-appellee Edward I. Koch.

Wikler, Gottlieb, Taylor & Howard, Harry A. Gottlieb, Leonard H. Moche and Glenn Backer, New York City, submitted a brief for defendants-appellees Tri-State Regional Planning Com'n and related individuals.

Before LUMBARD, FRIENDLY and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

Litigation to enforce the complex regulatory pattern established by the Clean Air Act, 42 U.S.C. §§ 7401–7642 (Supp. III 1979), may be brought in a district court or a court of appeals, depending upon the relief sought. In general, a court of appeals may consider challenges to agency action taken by the Environmental Protection Agency (EPA), § 7607(b),[1] and a district court is the proper forum for suits to compel the EPA to take nondiscretionary action and to compel state and local agencies and officials to comply with requirements of a state implementation plan (SIP) approved by EPA, § 7604(a). This suit, and a companion action decided today, *Council of Commuter Organizations v. Gorsuch*, 683 F.2d 648 (2d Cir. 1982), both concern attempts to enforce the Act in connection with efforts to reduce air pollution in the New York City metropolitan area. The difficulty of that task and the resulting range of issues thrust upon reviewing courts are illustrated by the fact that both suits, fundamentally concerned with the environmental problem of air pollution, require judicial consideration of such diverse topics as bridge tolls and mass transit systems. The companion case challenged EPA's September 9, 1981, action approving various revisions of New York's SIP that concern improving mass transit. This suit, brought before EPA acted, challenged the agency's failure to act and the failure of various state and local agencies to comply with SIP requirements, some of which have been superseded by EPA's 1981 action. The suit was brought by the Council of Commuter Organizations and other concerned individuals and groups. The District Court for the Southern District of New York (Milton Pollack, Judge) dismissed the suit, ruling that some of the claims were moot in light of the EPA's 1981 action, other claims were premature for lack of the statutory 60-day notice, and the complaint in general was vague and conclusory. 524 F.Supp. 90. We affirm the dismissal of the suit, although we find the issues somewhat more complex than did the District Court.

I.

In the companion case, *Council of Commuter Organizations v. Gorsuch, supra*, we uphold EPA's 1981, approval of New York's proposed plan for mass transit improve-

---

1. References to provisions of the Clean Air Act are to the appropriate section number of 42 U.S.C. (Supp. III 1979).

ments. We assume familiarity with that decision and recount only in brief the statutory background of legislative changes to the Clean Air Act and the history of New York's attempts to reduce intolerably high levels of pollution in the New York City metropolitan area as required by the Act. In 1973, EPA approved a revision to New York's SIP that added transportation-related measures to New York's plan for reduction of carbon monoxide and ozone pollution levels in the New York City metropolitan area (hereafter "1973 plan"). 38 Fed.Reg. 16,550, 16,560 (June 22, 1973). In its 1973 plan, New York chose to impose tolls on the bridges into Manhattan across the East and Harlem rivers and to implement three public transit strategies—marketing public mass transit, coordinating bus and subway facilities, and rehabilitating the existing transit system. See 46 Fed.Reg. 44,979, 44,982 (Sept. 9, 1981). We previously upheld in large part EPA's 1973 approval of the revisions and thereafter affirmed a court order enforcing the bridge toll strategy. See Friends of the Earth v. USEPA, 499 F.2d 1118 (2d Cir. 1974); Friends of the Earth v. Carey, 535 F.2d 165 (2d Cir. 1976); Friends of the Earth v. Carey, 552 F.2d 25 (2d Cir.), cert. denied, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977).

On May 24, 1979, as part of its Part D revisions, §§ 7501–7508, New York submitted a revised plan containing public transportation improvement and transportation control measures designed to comply with the requirements of both the Moynihan-Holtzman Amendment, § 7410(c)(5), and the so-called "missing" Part D requirement, § 7410(a)(3)(D). This plan proposed various transit improvement projects designed to enhance fare stability, operational safety and reliability, comfort, security, and availability of service in the transit system, as well as new transportation control strategies.[2] In particular, the plan's fare stability component required the maintenance of the 50-cent transit fare through 1981 and limited increases thereafter to less than increases in the cost of living. On May 21, 1980, EPA conditionally approved[3] all elements of New York's plan as meeting the requirements of Part D and the Moynihan-Holtzman Amendment except those relating to mass transit improvement. The new transportation control strategies and a plan for updating emissions inventories (as required by § 7502(b)(4)) were among the measures approved in EPA's conditional approval (hereafter "1980 plan"). 45 Fed.Reg. 33,981 (May 21, 1980); 44 Fed.Reg. 70,754, 70,771–72 (Dec. 10, 1979). Then on June 30, 1980 EPA proposed to disapprove the mass transit elements of New York's plan. 45 Fed.Reg. 43,794 (June 30, 1980).

Meanwhile on June 26, 1980 plaintiffs served a 60-day notice, § 7604(b), of their intent to initiate a citizen suit to compel enforcement of the mass transit improvement requirement of the Moynihan-Holtzman Amendment and to enjoin a proposed fare increase. In July 1980, the transit fare was increased from 50 cents to 60 cents, contrary to the commitment to maintain the 50-cent fare through 1981 that was part of the fare stabilization component of New York's proposed plan for public transportation improvement.[4] Then, on December 3, 1980, plaintiffs filed their complaint in this action against various state and local agencies and officials and federal officials of EPA and the Department of Transportation under the citizen suit provision of the Clean

2. "Transportation control measures" are strategies designed to reduce pollution by limiting or controlling motor vehicle use. "Public transit improvement measures" are strategies for the improvement or expansion of mass transit systems, which indirectly facilitate a reduction in motor vehicle usage and its associated pollutant effect.

3. We recently upheld EPA's conditional approval technique except insofar as it permitted the moratorium of § 7410(a)(2)(I) to be lifted prior to full compliance with the requirements of Part D. See generally Connecticut Fund for the Environment, Inc. v. EPA, 672 F.2d 998 (2d Cir. 1982).

4. The transit fare was again increased to 75 cents in July 1981. New York relied on its fare stabilization strategy to satisfy the statutory requirement of a demonstration of an equivalent reduction in emissions to that anticipated from the bridge toll strategy. § 7410(c)(5)(B).

Air Act, § 7604(a). On March 3, 1981, the District Court dismissed the complaint under Fed.R.Civ.P. 8 with leave to replead. The amended complaint, filed on March 30, 1981, sought among other things (1) to compel EPA to perform its non-discretionary duty to approve or disapprove New York's proposed plan, see § 7410(a)(2); Connecticut Fund for the Environment, Inc. v. EPA, 672 F.2d 998, 1010 (2d Cir. 1982); Citizens for a Better Environment v. Costle, 515 F.Supp. 264 (N.D.Ill.1981); (2) to compel EPA to issue notices of violations of New York's 1973 plan, 1980 plan, and proposed mass transit improvement plan to various state and local officials under § 7413(a)(1); and (3) to order the enforcement of the provisions of New York's plans that were alleged to have been violated by the state and local defendants (including the commitment to maintain the transit fare at 50 cents through 1981). At the request of the parties, including plaintiffs, the District Court adjourned a hearing on motions challenging the amended complaint until September, 1981, in anticipation of final action on New York's mass transit improvement plan by EPA.

EPA then proposed to delete the transportation control strategies of New York's 1973 plan as superseded by the new transportation control strategies of the conditionally approved 1980 plan and to delete the 1973 plan's mass transit improvement strategies from New York's SIP once EPA gave final approval to New York's still unapproved new mass transit program. 46 Fed.Reg. 39,612 (Aug. 4, 1981). In September 1981, EPA gave final approval to the mass transit elements of New York's plan (hereafter "1981 plan"). 46 Fed.Reg. 44,979 (Sept. 9, 1981). EPA's reasons for deciding to approve the submittal after its initially proposed disapproval are outlined in our decision in the companion case, Council for Commuter Organizations v. Gorsuch, supra. New York's commitment to supply additional implementing details and schedules for the transit plan by July 1, 1982, was critical to EPA's decision to approve the plan. In December 1981, EPA formally deleted the 1973 plan's transportation-related strategies from New York's SIP in accord with its proposed action of August 4, 1981. 46 Fed.Reg. 62,063 (Dec. 22, 1981).

Following EPA's approval of New York's mass transit plan (1981 plan) but prior to the formal deletion of the 1973 plan's transportation-related strategies, the District Court on October 13, 1981, dismissed plaintiffs' amended complaint. The District Court found that EPA's September 1981 approval mooted plaintiffs' claims alleging violations of the preexisting SIP as well as the attempt to compel EPA to approve or disapprove New York's transit improvement submittal. As for plaintiffs' claims of violations of the just approved 1981 plan, including the fare increases in violation of the state's fare stabilization strategy, the District Court found that plaintiffs had not given 60 days' notice of the alleged violations as required by § 7604(b)(1). At the time of the District Court's decision, 60 days had not even elapsed following EPA's approval of New York's transit plan in September 1981. Additionally, the District Court held that "plaintiffs' descriptions of the alleged violations are so vague and conclusory as to fail to indicate what activity, and on whose part, plaintiffs complain." And with respect to all claims against EPA officials, the District Court held that there was no nondiscretionary duty to issue notices of violations against the state and local defendants because EPA had not made a discretionary finding of any violation.

In a previous opinion reported at 515 F.Supp. 36, the District Court had dismissed the complaint against defendant Tri-State Regional Planning Commission ("Tri-State") and its officials upon other grounds. Tri-State is an interstate agency created by interstate compact that is responsible for planning transportation improvements in the metropolitan area. Tri-State is the region's officially designated Metropolitan Planning Organization under 23 U.S.C. § 134 (1976). The District Court noted that under the compact legislation creating Tri-State, "It shall enjoy the sovereign immunity of the party states and may not be sued in any court or tribunal whatsoever . . . ,"

N.Y.Unconsol.Laws § 8311 (McKinney 1979), and observed:

> While in certain cases, a state official may be personally sued to perform a duty imposed on him by federal law, without transgressing the Eleventh Amendment immunizing a state from being sued, *Ex parte Young*, 209 U.S. 123, 152 [28 S.Ct. 441, 450, 52 L.Ed. 714] (1908); *Rothstein v. Wyman*, 467 F.2d 226, 236 (2d Cir. 1972), *cert. denied*, 411 U.S. 921 [93 S.Ct. 1552, 36 L.Ed.2d 315] (1973), that principle has no application in the circumstances to Tri-State or the heads of its organization.

The court reasoned that because Tri-State has power only to plan strategies and not to enforce or implement them, plaintiffs were seeking to compel action by Tri-State for implementation of New York's plans that Tri-State was powerless to take.

## II.

In dismissing plaintiffs' complaint, the District Court was apparently under the impression that it contained two types of claims of alleged violations: those based on plans incorporated into New York's SIP as part of New York's 1973 plan and those based on the mass transit improvement measures that became part of New York's SIP as part of the 1981 plan. The District Court overlooked a third category of claims of alleged violations—those based on measures contained in New York's conditionally approved 1980 plan. This third category includes the alleged violations of transportation control measures, emission inventory revision requirements, and other measures in the 1980 plan designed to meet Part D requirements. The third category arguably also includes alleged violations of many mass transit improvement measures that were approved by EPA as part of the 1981 plan because EPA, perhaps inadvertently, may have previously incorporated many of these measures, including the fare stabilization strategy, into New York's SIP when it added the document entitled "New York State Air Quality Implementation Plan For Control of Carbon Monoxide and Hydrocarbons in New York City Metropolitan Area Volume 1" to New York's SIP as part of its conditional approval of May 1980. *See* 45 Fed.Reg. at 33,981, 33,992–93 (incorporating document into New York's SIP as codified at 40 C.F.R. § 52.1670).[5]

■ Plaintiffs do not dispute that alleged violations in the first category, those concerning the 1973 plan, were mooted by EPA's deletion of the 1973 plan strategies from New York's SIP. In order to maintain a citizen suit under § 7604(a)[6] plain-

---

**5.** New York's mass transit improvement measures were contained in two documents. The more comprehensive document, entitled "New York State Air Quality Implementation Plan—The Moynihan/Holtzman Amendment Submission: Transit Improvements in the New York City Metropolitan Area," was not added to New York's SIP until EPA gave New York's mass transit improvement plan final approval in September 1981. 46 Fed.Reg. at 44,982 (Sept. 9, 1981) (incorporating report into New York's SIP at 40 C.F.R. § 52.1670). The other document, which dealt primarily with strategies required by Part D requirements other than the mass transit improvement requirement, had a section in chapter V summarizing New York's mass transit improvement strategies including the fare stabilization strategy. This document, entitled "New York State Air Quality Implementation Plan For Control of Carbon Monoxide and Hydrocarbons in New York City Metropolitan Area Volume 1," was apparently added to New York's SIP on May 21, 1980, *see* 45 Fed.Reg. at 33981, 33992–93, although EPA clearly did not intend to be taking any action on New York's mass transit

improvement proposals at that time, *see id.* at 33,981, 33,982–83; 40 C.F.R. § 52.1673 (1981).

**6.** Section 7604(a) provides in pertinent part:

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . .
>
> . . . . . . . . .
>
> The district courts shall have jurisdiction . . . . to enforce such an emission standard limitation, or such an order, or to order the

tiffs must allege a violation of a strategy of an *applicable* implementation plan.[7] As a technical matter, the District Court was incorrect, at the time of its decision of October 13, 1981, in ruling that the strategies of the 1973 plan were no longer applicable. These strategies were not deleted from New York's SIP until December 1981. 46 Fed.Reg. at 62,063. Until that time they continued to be part of New York's SIP and were enforceable as applicable federal law. However, as plaintiffs concede, the alleged violations of the 1973 plan have now become moot since they are no longer part of an applicable implementation plan.[8]

■ Plaintiffs also concede that alleged violations in the second category, those concerning the 1981 mass transit improvement plan, were premature for lack of a supplemental 60-day notice specifically giving the alleged violators notice of non-compliance as required by § 7604(b).[9] Nevertheless, they contend that the District Court should not have dismissed these claims, but instead held them in abeyance until 60 days had elapsed. *Cf. Baughman v. Bradford Coal Co.*, 471 F.Supp. 488, 490 (W.D.Pa.1977) (notice requirement satisfied by passage of 60 days following filing of complaint), *aff'd*, 592 F.2d 215 (3d Cir. 1979); *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 373 F.Supp. 1089, 1092 (D.D.C.1974) (similar), *rev'd on other*

*grounds*, 511 F.2d 809 (D.C.Cir.1975). When defendants are alleged to have violated SIP requirements in force for some appreciable period of time, the "hold in abeyance" technique would seem to satisfy the purposes of the 60-day notice requirement, which is to be construed "flexibly and realistically." *Friends of the Earth v. Carey*, *supra*, 535 F.2d at 175.

■ However, in the circumstances of this case we cannot say that the District Court erred in concluding that the claims presented without the required 60-day notice should be dismissed.[10] The 1981 plan requirements allegedly violated had not even been in effect for 60 days at the time the District Court ruled. Dismissal was not inappropriate, nor do we believe that we should now reinstate the suit simply because 60 days have now elapsed since defendants received notice by the filing of the complaint. As we discuss, *infra*, this complaint is not a model of clarity that should readily be accepted as a substitute for the statutory 60-day notice.

■ Nor do we agree with plaintiffs that requiring them to file a new action after they have complied with the 60-day notice requirement will cause an additional one-year delay in the adjudication of their claims. We see no reason why a new suit, if handled expeditiously by the District Court, should result in delays any longer

---

Administrator to perform such act or duty, as the case may be.

**7.** Under § 7604(a)(1) plaintiffs may bring suit against the state and local defendants if they are alleged to be in violation of "an emission standard or limitation under this chapter." Section 7604(f) defines "emission standard or limitation under this chapter" to include a "condition or requirement under an applicable implementation plan." Section 7410(d) defines "applicable implementation plan" as "the implementation plan, or most recent revision thereof, which has been approved under [§ 7410(a) ] or promulgated under [§ 7410(c)]."

**8.** Plaintiffs do not contend that any of the allegedly violated strategies of the 1973 plan were carried over intact from the preexisting SIP to the new transportation plan.

**9.** Section 7604(b) requires that
No action may be commenced—

(1) under subsection (a)(1) of this section—
(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(2) under subsection (a)(2) of the section prior to 60 days after the plaintiff has given notice to the Administrator.

**10.** If an allegedly violated SIP provision, for which notice of an alleged violation had been served, were carried over without change in a revised SIP (which plaintiffs do not claim occurred here), there would clearly be no need for additional notice. A revision in one part of a SIP does not insulate recalcitrant state and local officials from enforcement actions regarding unaffected portions of the SIP.

than would result from permitting a supplemental pleading in a suspended suit following the passage of 60 days. And in light of the excessive delays that have already plagued plaintiffs' attempts to seek compliance with the mass transit improvement provisions of the Clean Air Act, we think there is every reason to believe that the District Court will handle a refiled claim with its customary dispatch.[11]

The District Court apparently overlooked the third category of claims—those based on measures contained in the conditionally approved 1980 plan. Plaintiffs are correct that these claims were not premature as to alleged violations of the 1980 plan. The transportation control strategies, emissions inventory revision requirements, and other provisions satisfying Part D requirements in that plan became effective and enforceable as part of an applicable implementation plan upon EPA's conditional approval in May 1980.[12] When plaintiffs' 60-day notice of violation was served on June 26, 1980, these provisions were already part of an applicable implementation plan.[13]

We have scrutinized plaintiffs' rather abstruse amended complaint and its appendix in a generally unrewarding search for the precise provisions of the 1980 plan alleged to have been violated and the precise manner in which they have been violated. Most of the allegations are vague and conclusory assertions that various provisions of the Clean Air Act have been violated, e.g., "Failure to make reasonable further progress in 1979 SIP implementation" or "Failure to rehabilitate/improve reliability, safety, etc., of region's transit system" followed by citation to large chunks of New York's SIP as the allegedly violated provision. In order to sustain a citizen suit for violation of an emission standard or limitation contained in an applicable plan,[14] plaintiffs must allege a violation of a specific strategy or commitment in the SIP and describe, with some particularity, the respects in which compliance with the provision is deficient. For instance, rather than alleging a general violation of the statutory "reasonable further progress" requirement, § 7502(b)(3), followed by a citation to the generally relevant pages containing the New York SIP measures designed to meet the requirement, plaintiffs should identify

11. There will be no need for the District Court to place a new suit on the suspense calendar pending EPA action on New York's July 1, 1982, submittal. That submittal will augment rather than replace the existing plan by providing implementing details and schedules for already existing plan strategies. There is no reason why plaintiffs' claims alleging violations of provisions of the existing plan (concerning fare stabilization, for example) cannot be adjudicated while the July 1, 1982, submittal is pending before EPA. After that proposal is approved, plaintiffs can be permitted to amend their pleadings as appropriate (after a 60-day notice directed to any non-compliance with newly approved requirements).

12. Section 7410(d) defines "applicable implementation plan" as "the implementation plan, or most recent revision thereof, which has been *approved* under [§ 7410(a)] or promulgated under [§ 7410(c)]." (Emphasis added). Since the Clean Air Act does not make any mention of "conditional approvals," it is not surprising that § 7410(d) does not include conditionally approved plans in its definition of applicable plans. *See generally Connecticut Fund for the Environment, Inc. v. EPA, supra*, upholding in large part EPA's conditional approval technique. However, when EPA conditionally ap-

proves the provisions of a proposed SIP revision, those provisions are inserted into the state's SIP. *See, e.g.*, 45 Fed.Reg. at 33,983, 33,992–93 (incorporating New York's conditionally approved 1980 plan into state SIP's codification at 40 C.F.R. §§ 52.1670–.1689). For purposes of enforceability, conditional approval is tantamount to final approval under § 7410(d). Of course, the additional submittals that are the "condition" for EPA's final approval are not yet applicable.

13. To the extent that plaintiff's notice fails to allege violations of provisions of the 1980 plan not relating to mass transit, that defect would have been cured by the passage of 60 days after the filing of the amended complaint on March 30, 1981, if the complaint had been sufficiently specific. *See Baughman v. Bradford Coal Co., supra; Metropolitan Washington Coalition for Clean Air v. District of Columbia, supra.*

14. Section 7604(f) defines "emission standard or limitation" to include various conditions or requirements of applicable SIPs, including those relating to "transportation control measures" and "air quality maintenance plans," § 7604(f)(3).

the specific strategies designed to achieve reasonable further progress that are being carried out by New York. Plaintiffs should also give some idea of the manner in which the state has failed to comply with a SIP requirement. Thus, rather than merely alleging a violation of the emissions inventory revision requirement, § 7502(b)(4), and citing to a line in a table assigning responsibility for carrying out the strategy to various state officials, plaintiffs should specify the nature of the deficiency in the implementation of New York's emissions inventory revision requirement.[15]

■ Our examination of plaintiffs' complaint reveals that the only allegations that are arguably sufficient to state a claim for violation of an emission standard or limitation are some of those related to the mass transit improvement provisions of New York's SIP, such as the alleged violation of the fare stabilization strategy by recent fare increases. But although some of these provisions were inadvertently added to New York's SIP in 1980, they were not enforceable until EPA's September 1981 approval because EPA had made it clear in its 1980 notice of conditional approval that it did not intend to take any action on mass transit-related provisions in the documents before it. 45 Fed.Reg. at 33,981, 33,982–83;

see 40 C.F.R. § 52.1673 (1981). None of the mass transit-related proposals, including those in chapter V of the document entitled "New York State Air Quality Implementation Plan For Control of Carbon Monoxide and Hydrocarbons in New York City Metropolitan Area Volume 1," became applicable until approved in September 1981. We conclude that the allegations that are part of the third category of claims, like those in the first two categories, cannot survive the motion to dismiss.[16]

■ Our conclusion that the District Court properly dismissed all of the claims of plaintiffs is applicable to the federal defendants as well as to the state and local defendants. With respect to the claim against officials of the EPA to compel the issuance of notices of violations of SIP provisions, § 7413(a), EPA cannot be compelled to issue a notice of violation where (1) a SIP provision is no longer in effect; (2) 60-day notice of an alleged violation of a SIP provision has not been given, § 7604(b)(2); or (3) plaintiffs have not stated a valid claim of a violation of an emission standard or limitation. In any event, the District Court has jurisdiction to compel EPA to carry out only non-discretionary duties. § 7604(a). Under § 7413(a),[17] EPA has a non-discretionary duty to issue a notice of violation

15. We suspect that plaintiffs were citing to the incorrect document in attempting to identify the pertinent SIP provision implementing the emissions inventory revision requirement. It would appear that the fulfillment of this requirement is primarily governed by the document entitled "Volume III—Air Quality and Emission Inventory." *See* 40 C.F.R. § 52.-1670(c)(46)(iii) (1981).

16. We also affirm the dismissal of plaintiffs' claims of violations of the air quality monitoring requirements of § 7619. Plaintiffs allege that EPA has not set up an independent network of air quality monitoring stations as required by statute. But EPA has previously interpreted the statute as requiring only a separate national network of monitoring stations (NAMS) that can be run primarily by the states. EPA proposed and adopted a final rule incorporating this interpretation. *See* 43 Fed. Reg. 34,892 (Aug. 7, 1978); 44 Fed.Reg. 27,558 (May 10, 1979). We have no jurisdiction on this appeal to review EPA's interpretation of the statute.

We do not think that plaintiffs' complaint can be fairly read as alleging a failure on the part of New York to carry out the monitoring requirements of its SIP. Plaintiffs do not even cite the pertinent SIP provisions, some of which predate the Part D revisions, governing air quality monitoring in New York.

17. Section 7413(a) provides in relevant part:
(1) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. . . .

(2) Whenever, on the basis of information available to him, the Administrator finds that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he shall so notify the State.

whenever it determines that a violation has occurred. *New England Legal Foundation v. Costle*, 475 F.Supp. 425, 433 (D.Conn. 1979), *aff'd*, 632 F.2d 936 (2d Cir. 1980), *and* 666 F.2d 30 (2d Cir. 1981); *cf. Wisconsin's Environmental Decade, Inc. v. Wisconsin Power & Light Co.*, 395 F.Supp. 313 (W.D. Wis.1974). But here EPA has expressly stated, in a deposition by Acting Regional Administrator Richard T. Dewling, that it was not aware of any violation of the 1973 and 1980 plans. Therefore, EPA had fulfilled any non-discretionary duties with regard to alleged violations of the 1973 and 1980 plans.

Our conclusions that the allegations of the complaint are either moot, premature, or inadequately pleaded apply to the claims against officials of the Tri-State Regional Planning Authority. These claims were dismissed by the District Court primarily because the relief sought was deemed to be beyond the authority of the agency. On appeal, the Tri-State officials also renew a threshold objection of Eleventh Amendment immunity. Since the immunity issue is in a sense jurisdictional and since Tri-State's amenability to Clean Air Act claims is certain to recur, consideration of the specific claims against Tri-State's officials is warranted.

 We disagree with the contention of the Tri-State officials that they are immune from plaintiffs' claims for equitable relief. As exemplified by New York's legislation, the statutes of the three compacting states provide that Tri-State shall "enjoy the sovereign immunity of the party states and may not be sued in any court or tribunal whatsoever." N.Y.Unconsol. Laws § 8311 (McKinney 1979). Plainly Tri-State is entitled to Eleventh Amendment immunity since the compacting states "structured the new agency to enable it to enjoy the special constitutional protection of the States themselves," *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). But the constitutional immunity thereby secured is no greater than that enjoyed by the compacting states. It is

well established that the Eleventh Amendment does not shield state officials from prospective injunctive relief to secure their compliance with federal law. *E.g., Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). And we do not construe the statutes of the compacting states as purporting to confer a statutory immunity broader than the constitutional immunity. The phrase "may not be sued in any court" is properly understood to create an immunity coextensive with the Eleventh Amendment; any broader reading would pose the significant constitutional issue of whether a state has power to insulate its officials from a district court injunction seeking compliance with federal law.

Equally unavailing is the contention that Tri-State officials could not be subject to otherwise valid Clean Air Act claims because the agency has power only to engage in planning. Planning is an essential ingredient to the successful functioning of the Clean Air Act. The importance of the planning function is amply illustrated by EPA's interpretation of the Moynihan-Holtzman Amendment as permitting a two-phase implementation process, whereby the first stage will involve substantial planning regarding the future implementation of mass transit improvement strategies. We are today upholding EPA's interpretation of the planning requirements in the companion case, *Council of Commuter Organizations v. Gorsuch, supra*. Enforcement of planning strategies is vital to the success of EPA's construction of the Clean Air Act. Where such planning provisions are not faithfully being carried out by those on whom a SIP places responsibility, citizen suits may properly be brought to compel enforcement. Of course, it will always be open to inquiry whether Tri-State officials in fact share some of the planning burdens imposed by a SIP, and any relief must be tailored to the limits of the agency's planning function.

The dismissal of plaintiffs' complaint is affirmed. In light of the excessive delay plaintiffs have encountered in their at-

tempts to litigate New York's compliance with the Moynihan-Holtzman Amendment, the District Court is requested to give prompt attention to a new complaint that complies with the 60-day notice requirement and alleges sufficiently specific violations of New York's mass transit improvement program.