**ACTION FOR RATIONAL TRANSIT, et al., Appellants,**

v.

**WEST SIDE HIGHWAY PROJECT, by its Executive Director, Lowell K. BRIDWELL, et al., Appellees.**

No. 611, Docket 82–6197.

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1982.

Decided Feb. 1, 1983.

William Hoppen, New York City (David M. Corwin, New York City, of counsel), for appellants.

Jonathan Z. Cannon, Beveridge & Diamond, P.C., Washington, D.C. (Milton S. Gould, Shea & Gould, New York City, Gary H. Baise, Don G. Scroggin, Beveridge & Diamond, P.C., Washington, D.C., of counsel), for appellees West Side Highway Project, Hugh L. Carey, Governor, State of N.Y., William C. Hennessy, Commissioner, New York State Dept. of Transp., Michael J. Cuddy, Director, West Side Highway Project.

R. Nicholas Gimbel, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty. for the S.D. of N.Y., Peter C. Salerno, Asst. U.S. Atty., New York City, of counsel), for appellees Environmental Protection Agency and U.S. Dept. of Transp.

Cathy A. Fleming, Donovan, Leisure, Newton & Irvine, New York City (Sanford M. Litvack, William A. Davis II, Washington, D.C., Donovan, Leisure, Newton & Irvine, New York City, of counsel), for appellee Robert F. Flacke, Commissioner, New York State Dept. of Environmental Conservation.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

PER CURIAM:

Only four claims are urged on appeal out of the original ten as to which the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge, granted the city, state, regional, and federal defendants summary judgment in this suit to halt the West Side Highway Project. *Action for Rational Transit v. West Side Highway Project,* 536 F.Supp. 1225 (S.D.N.Y.1982). We affirm the dismissal of the claims relating to alleged noncompliance with the Federal Aid Highway Act, 23 U.S.C. §§ 104(f)(3), 134, and 315 (1976 and Supp. V 1981) (Claim 7), and violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 (1976 and Supp. IV 1980) (Claim 8), on the basis of Judge Griesa's opinion.[1] Thus the two surviving claims are those numbered 6 and 9 in the complaint, the dismissal of which we affirm for the reasons stated below.

Claim 6 alleges a number of violations of 1973 and 1979 State Implementation Plans (SIPs) promulgated under the Clean Air Act, 42 U.S.C. §§ 7401–7642 (Supp. V 1981). Seven of the allegations comprised by Claim 6 relate to the 1973 SIP; these claims are moot under our decision in *Council of Commuter Organizations v. Metropolitan Transit Authority,* 683 F.2d 663 (2d Cir.1982), because those provisions of the 1973 SIP allegedly violated "are no longer part of an applicable implementation plan." *Id.* at 669. Thus we need concern ourselves only with three allegations made under the 1979 SIP and three other related allegations made in Claim 9 by Action for Rational Transit (ART) and its associated plaintiffs under the Clean Air Act.

### 1. *Violation of the 1979 SIP*

ART alleges that Westway violated the 1979 SIP by (1) undercutting the SIP's pro-

1. This case was consolidated with *Sierra Club v. United States Army Corps of Engineers* for opinion purposes in the district court. *Action for Rational Transit v. West Side Highway Project,* 536 F.Supp. 1225 (S.D.N.Y.1982). The fishery issues involved in *Sierra Club* are sub judice separately in this court. No. 82–6125 (2d Cir. filed Apr. 21, 1982).

posed prevention of transit riders' switching to automobile travel and reduction of the trend of increased automobile use, (2) violating the SIP's Transit Rehabilitation Strategy, and (3) violating the SIP's strategy for the reduction of automobile use and congestion in Manhattan's central business district. Those claims fail for two reasons.

First, neither the complaint nor counter affidavits "describe, with . . . particularity, the respects in which compliance" with the SIP is "deficient." *Council of Commuter Organizations v. Metropolitan Transit Authority,* 683 F.2d at 670. The defect is not merely procedural, but instead goes to the substance of the claim. The aims and goals of the SIP are not enforceable apart from the specific measures designed to achieve them; in order to state a claim a plaintiff must "allege a violation of a specific strategy or commitment in the SIP." *Id.* Ironically, ART's own requests for relief point up the insufficiency of its claims. In its claim that Westway violated the 1979 SIP's goal of preventing increased automobile use and "switching" from mass transit to automobiles, for example, ART's proposed relief would include "quantifiable [vehicle miles traveled] reductions by sector within New York City, with stated and enforceable schedules and timetables of compliance." Similarly, the claim alleging violation of the SIP's Transit Rehabilitation Strategy requests "revision of the [SIP] to include transit financing adequate to reverse . . . public transit decay."

■ It is clear that what ART seeks is not relief from violations of the existing SIP so much as revisions of the SIP by way of relief to make that document conform to ART's notion of proper environmental policy. But to the extent that ART *et al.* desire to augment or amend the SIP to correct perceived inadequacies, their arguments were not properly addressed to the district court. The courts of appeals have

exclusive jurisdiction to review SIPs approved by the Environmental Protection Agency (EPA), *see Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), and we have recently upheld those portions of the 1979 SIP pertinent here as approved by the EPA under 42 U.S.C. § 7607(b)(1) in *Council of Commuter Organizations v. Gorsuch,* 683 F.2d 648 (2d Cir.1982).

■ Even if we were to find the plaintiffs' complaints sufficient to state a cause of action under the 1979 SIP, however, the failure to pursue these claims in state court would bar our consideration of them here. The New York State Department of Environmental Control (NYSDEC), the state agency responsible for ensuring compliance with the SIP, concluded that Westway would not violate any portion of the SIP, including transportation control measures and ambient air quality standards.[2] Plaintiffs could have challenged that finding under New York law, *see* N.Y.Envtl.Conserv.Law § 19–0511(2) (McKinney 1982), but failed to do so. That determination is now final, representing the end product of an administrative process "entrusted by Congress to state officials." *League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1174 (9th Cir.) (Bartels, J.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979); *see* 42 U.S.C. § 7401(a)(3) ("The Congress finds . . . that the prevention and control of air pollution at its source is the primary responsibility of States and local governments").

The plaintiffs here knew that their interests were at stake in the indirect source proceedings; their initial complaint was filed in 1972, at least two years before the proceedings commenced. "Their failure to pursue [the state] avenue of review within the applicable time limitations does not now entitle them to a remedy in a federal fo-

---

2. Under the then applicable SIP, Westway was subject to indirect source review procedures. The 1977 amendments to the Clean Air Act made such review optional. 42 U.S.C. § 7410(a)(5)(A)(i) (Supp. IV 1980); *see Connecticut Fund for the Environment, Inc. v. EPA,* 672 F.2d 998, 1013–14 (2d Cir.1982). New York amended its SIP to eliminate indirect source review in November, 1981, and this amendment was approved by the EPA. *See* 46 Fed.Reg. 55690–92 (1981).

rum." *Trounday,* 598 F.2d at 1174. *See also Shell Oil Co. v. Train,* 585 F.2d 408, 414 (9th Cir.1978) (availability of state judicial forum for review of state environmental agency actions forecloses review in federal court under Administrative Procedure Act); *see generally Union Electric Co. v. EPA,* 427 U.S. 246, 269, 96 S.Ct. 2518, 2531, 49 L.Ed.2d 474 (1976). Plaintiffs are thus estopped because the issues they urge were aired, or could have been aired, in the proceedings before NYSDEC. *See generally Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71–72, 91 S.Ct. 203, 209–10, 27 L.Ed.2d 203 (1970); *International Telephone & Telegraph Corp. v. United Telephone Co. of Florida,* 550 F.2d 287, 289 (5th Cir.1977).

The plaintiffs rely heavily on documents indicating that the EPA originally took the position that Westway was inconsistent with certain strategies in the 1973 SIP. But the EPA did not appeal NYSDEC's ultimate finding that the Project was consistent with the 1979 SIP, and so we fail to see how these documents are relevant. It is wholly unrealistic to expect that agencies and interests participating in a hearing as lengthy as the one here will agree on all issues throughout the course of a hearing, and it would defeat the purposes of such hearings to allow litigants to press positions taken earlier by other participants.[3]

2. *Failure to conform to the SIP as a bar to federal funding of Westway*

■ The plaintiffs argue that the federal defendants here are prohibited from providing any funds or assistance for Westway under 42 U.S.C. § 7506(c), which forbids any "department, agency, or instrumentality of the Federal Government" from "support[ing] ... or provid[ing] financial assistance for ... any activity which does not

conform to" an SIP. What we have said above disposes of any contention that Westway's alleged failure to conform to the SIP prevents the United States Department of Transportation (USDOT) from funding the project under § 7506(c). Also without merit is the plaintiffs' claim that 42 U.S.C. § 7506(d), requiring federal agencies to "give priority in the exercise of [their] authority ... to ... those portions of plans prepared ... to achieve and maintain the national ambient air quality standard," precludes funding or dictates that funds earmarked for Westway should be used for other purposes. Of course, presumably, funding for public transportation could be increased if Westway were "traded in," but when EPA approved the SIP it recognized that New York had alternative mechanisms available to finance public transportation measures and must be allowed the discretion to choose among them. *See Council of Commuter Organizations v. Gorsuch,* 683 F.2d at 662.

■ The final contention made in the plaintiffs' ninth claim concerns the EPA's alleged failure to issue notices of violation with respect to Westway. It is true that the EPA has "a non-discretionary duty to issue a notice of violation whenever it determines that a violation has occurred." *Council of Commuter Organizations v. Metropolitan Transit Authority,* 683 F.2d at 671–72. But even if we were convinced that federal regulations had been violated by virtue of Westway's nonconformity with the SIP, the plaintiffs' claim against the EPA is now moot. As noted above, the indirect source review component of New York's SIP has been eliminated; because the EPA's enforcement authority extends only to an "applicable implementation plan," *id.* at 669, the earlier indirect source review provisions cannot form the basis for a notice of violation.

---

**3.** ART's argument that NYSDEC violated federal standards by applying a 1% "de minimis" rule with respect to hydrocarbon emissions in the face of EPA's suggestion in a letter dated January 22, 1979, that such an approach was contrary to EPA policy, *see* ART Br. at 22–23, is also foreclosed by ART's failure to appeal NYSDEC's findings through the New York state courts. ART cites no support, statutory or otherwise, establishing that this de minimis rule, or its application in this case, amounts to a violation of a federal emission standard or limitation, nor does ART argue that a "correct" approach to hydrocarbon emissions would have dictated a different result in the indirect source review hearings before NYSDEC.

It appears that plaintiffs' principal complaint is that the 1979 SIP considerably weakened the 1973 SIP and that EPA has agreed to elimination of indirect source permit review. These are policy matters going to the administration of the Clean Air Act, however, and have nothing to do with the power of the courts. Accordingly, for the reasons above stated, we affirm the judgment.

Judgment affirmed.