ATLANTIC TERMINAL URBAN RE-
NEWAL AREA COALITION, John
Theodore Glick, Anne McClellan, Lo-
raine Oliver, and Mildred Davis, Plain-
tiffs,

v.

NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION;
New York City Public Development
Corporation; New York City Board of
Estimate; Edward I. Koch; Harvey W.
Schultz; New York City Planning Com-
mission; Sylvia Deutsch; United States
Environmental Protection Agency; Lee
M. Thomas; United States Department
of Housing and Urban Development;
and Samuel R. Pierce, Jr., Defendants.

No. 87 Civ. 4242(MEL).

United States District Court,
S.D. New York.

Oct. 7, 1988.

Edward Copeland, Elizabeth St. Clair, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiffs.

Peter L. Zimroth, Corp. Counsel of City of New York, New York City, for Mun. Defendants; Jeffrey Schanback, John De Angeli, Terri Feinstein Sasanow, Asst. Corp. Counsel, of counsel.

LASKER, District Judge.

This motion arises in a suit brought by the Atlantic Terminal Urban Renewal Area Coalition, an association whose purpose is to monitor the environmental quality in downtown Brooklyn, and by named individuals who live and work in neighborhoods of Brooklyn (collectively "ATURA") that surround and will be affected by the Atlantic Terminal and Brooklyn Center Projects ("the Project"), a proposed development to revitalize the community. Plaintiffs contend that the Project will cause new, as well as exacerbate existing, violations of the air quality standards of the Clean Air Act ("the Act"), 42 U.S.C. § 7401 et seq., and the New York State Implementation Plan ("SIP"), the plan adopted by the state and approved by the Environmental Protection Agency to ensure compliance with the Act. Specifically, plaintiffs maintain that the development of the Project, which will expand over twenty-four acres and include facilities as varied as theaters, housing, and shops, will increase the already unacceptable concentrations of carbon monoxide, known as hot spots, in the vicinity. The defendants include numerous federal and municipal agencies and officials responsible for enforcement and administration of the Clean Air Act, including review of proposed projects and their effect on air quality.

The New York City Department of Environmental Protection and its Commissioner Harvey W. Schultz, the New York City Public Development Corporation, the New York City Board of Estimate, Mayor of New York City Edward I. Koch, the New York City Planning Commission and its Chair Sylvia Deutsch (collectively "the municipal defendants") move pursuant to Fed. R.Civ.P. 12(b)(1) and (6) to dismiss count one of the amended complaint,[1] which states in relevant part:

> Defendants ... have failed to comply with the New York State SIP on carbon monoxide, to wit, they have not proposed or implemented measures to achieve attainment of the carbon monoxide standard by December 31, 1987 and to maintain it thereafter in spite of the fact that the Environmental Impact Statement for the Project identifies a violation or exacerbation of a violation of the carbon monoxide standard.[2]

The municipal defendants contend that the plaintiffs have failed to allege a violation of "an emission standard or limitation" as required to maintain a citizen suit, 42 U.S.C. § 7604(a)(1)(A) (1982), and that accordingly the court lacks subject matter jurisdiction.[3]

---

1. At the time of this motion, the municipal defendants were named only in count one of the complaint and thus they moved to dismiss the complaint against them. However, claim five of the amended complaint alleges that the municipal defendants pursued an Urban Development Action Grant for Project funding in violation of the Administrative Procedure Act.

2. Complaint at ¶ 43.

3. Defendants also argue that the other statutes cited in the complaint, 28 U.S.C. §§ 1331 and 2201, do not provide jurisdiction for this claim, an argument plaintiffs do not answer.

Moreover, even if the plaintiffs have alleged a violation of an "emission standard or limitation," they have not, according to the moving defendants, done so with the specificity required to state a cause of action.

## BACKGROUND

The citizen suit provision of Clean Air Act, 42 U.S.C. § 7604(a) (1982), states:

> [A]ny person may commence a civil suit on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an emission standard or limitation under this chapter....

"Emission standard or limitation" is defined to mean:

> (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
>
> .    .    .    .    .
>
> (3) ... any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements ...
>
> which is in effect under this chapter ... or under an applicable implementation plan.

42 U.S.C. § 7604(f) (1982).

■ Plaintiffs contend that the municipal defendants have violated an emission standard or limitation by failing to comply with § 3.6(A) of the New York SIP, which states:

> To further ensure that the carbon monoxide standard is attained in New York City, if an EIS [Environmental Impact Statement] for a project proposal identifies a violation or exacerbation of the carbon monoxide standard, then the City commits to assure that mitigating measures will be implemented by the project

sponsor or City, so as to provide for attainment of the standard by December 31, 1987 and maintenance of it thereafter.[4]

Section 3.6(A) of the SIP attempts to ensure conformity with the Clean Air Act's statutory deadline of December 31, 1987 for attainment of the national ambient air quality standard ("NAAQS") for carbon monoxide. 42 U.S.C. § 7502(a)(2) (1982).

The Final Environmental Impact Statement ("FEIS"), which was prepared in August 1986, states that even with mitigation measures, "11 locations in the area surrounding the Project will be in violation of the health standard for carbon monoxide in 1988 and 11 locations in the area surrounding the Project will be in violation of the same standards in 1991."[5] The FEIS further concludes:

> At the present time, the City is still studying additional areawide measures that would allow attainment of standards by December 31, 1987. In addition, the City is gathering and analyzing data so that refinements in the modeling methodology can be made .... Without these additional mitigation measures and refinements in analysis methodology, concentrations at [eleven of seventeen sites] would not be in conformance with the SIP.[6]

Plaintiffs allege that "[o]n information and belief, the City has not implemented measures as promised in the SIP so as to attain the carbon monoxide standard by December 31, 1987 and to maintain it thereafter"[7] and that its failure to do so, given the conclusions of the FEIS, violates § 3.6(A) of the SIP. ATURA's contentions that the FEIS reveals that the Project will exacerbate existing carbon monoxide standards and that the City has not required sufficient mitigation measures, although disputed by the City,[8] must be assumed to be

---

4. Complaint, Exhibit A (New York State Air Quality Implementation Plan, Amended January 1984).

5. Complaint at ¶ 29, citing Exhibit B (Atlantic Terminal and Brooklyn Center Projects Final Environmental Impact Statement, August 1986) at IV–32.

6. Complaint, Exhibit B at IV–34.

7. Complaint at ¶ 31.

8. The City included as an appendix to its reply memorandum a letter of June 2, 1987, from Christopher J. Daggett, Regional Administrator of the EPA to Ross Sandler, Commissioner of

true for purposes of this motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (allegations should be construed favorably to the pleader on a motion to dismiss, whether for lack of subject matter jurisdiction or failure to state a cause of action).

The question posed by this motion is whether, even assuming the mitigation measures do not ensure compliance with the NAAQS, the provision of the New York SIP upon which plaintiffs premise their claim is "an emission standard or limitation" as that term is defined in 42 U.S.C. § 7604(f). I conclude that it is and accordingly deny the municipal defendants' motion to dismiss count one for lack of subject matter jurisdiction, providing the complaint is amended within 45 days in the manner specified below.

## DISCUSSION

To maintain a citizen suit for violation of an emission standard or limitation, plaintiff must allege a violation of a "specific strategy or commitment in the SIP and describe, with some particularity, the respects in which compliance with the provision is deficient." *Council of Commuter Organizations v. Metropolitan Transp. Auth.*, 683 F.2d 663, 670 (2d Cir.1982). *See also Action for Rational Transit v. West Side Highway*, 699 F.2d 614, 616 (2d Cir.1983) (SIP provisions are not enforceable apart from the specific provisions meant to ensure their enforcement). Section 304 of the Clean Air Act, 42 U.S.C. § 7604 (1982), has been so construed to reflect Congressional intent:

> In order to avoid either overburdening the courts or unduly interfering with implementation of the act ... congress carefully circumscribed the scope of the

provision by authorizing citizens to bring suit only for violations of specific provisions of the act or specific provisions of an applicable implementation plan.

*Wilder v. Thomas*, 854 F.2d 605, 613 (2d Cir.1988).

The municipal defendants maintain that count one fails to satisfy this standard. Looking to the language of *Wilder v. Thomas*, 659 F.Supp. 1500, 1506 (S.D.N.Y. 1987), *aff'd*, 854 F.2d 605 (2d Cir.1988), a citizen suit brought pursuant to § 304 of the Clean Air Act to enjoin further construction of a project intended to revitalize the Times Square Area, moving defendants argue that § 3.6(A)

> is in essence a restatement of the *air quality* standard established under the Act. It is not an *emission* standard. It is not a specific strategy or commitment as to how the air quality standard will be met.

(emphasis in the original). Although the district court in *Wilder* was addressing a claim arising under § 3.5.3, which provided in relevant part that "all hot spots [carbon monoxide concentrations] will be eliminated by the end of 1987," defendants contend that the reasoning is equally applicable to count one of the case at hand because "it is the attainment portion of the SIP, and not the commitment to mitigate portion [of § 3.6(A)] which is at issue."[9] According to the municipal defendants, plaintiffs

> are not challenging the City's comitment to implement mitigation measures where an EIS identifies a violation or exacerbation of the CO standard, but its 'promise to use the environmental quality review act process to identify projects which will cause or exacerbate carbon monoxide violations and violations of the

---

the New York City Department of Transportation, and Harvey Schultz, Commissioner of the New York City Department of Environmental Protection. Even if this letter were considered, which it cannot to the extent that the motion is fashioned as one for failure to state a cause of action, it does not indicate a commitment on the part of the City to adopt mitigation measures that will achieve the carbon monoxide standard before the statutory deadline passes. The new mitigation proposal discussed in the letter, although satisfying the EPA's "concerns

about the City's commitment," will "not provide for attainment of the carbon monoxide standards at all locations until 1993." Moreover, the issue to be decided on this motion is not the adequacy of the mitigation measures.

9. Municipal Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss ("Reply Memorandum") at 12 (January 12, 1988).

standards and to then implement measures *to assure attainment by the end of this year.'* Plaintiffs' Memorandum at 12 (emphasis added).[10]

The defendants maintain that, so construed, the plaintiffs have alleged a SIP commitment essentially indistinguishable from that alleged by the plaintiffs in *Wilder* to the "ongoing process of identifying and analyzing carbon monoxide hot spots and ... to the implementation of measures specific to each hot spot as is found necessary," which the Court of Appeals held was not a condition or requirement relating to a transportation measure. 854 F.2d at 615–16.

The Court of Appeals, affirming the district court's dismissal of *Wilder*, concluded that § 3.5.3 simply restated the "CAA's requirement that the NAAQS for carbon monoxide be attained by December 31, 1987," and that its inclusion in the SIP was not sufficient to transform § 3.5.3 into a specific provision or requirement of a SIP. *Id.* at 615.

> Plaintiffs' construction of the CAA would eliminate the distinction between the NAAQS and measures that are designed to assure attainment of the NAAQS. The CAA and the regulations promulgated thereunder, however, emphasize the distinction between the attainment of the NAAQS, which is a goal of the CAA, and the specific provisions of an SIP which are the only permissible subjects of a citizen suit.

*Id.* at 614–15. *See also League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1173 (9th Cir.) (holding that § 304 of the Clean Air Act did not provide a basis for a suit alleging "prospective violations of the ambient air quality standards; such a construction would 'contravene the principle that such air quality standards are not emission limitations' "), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

The municipal defendants' characterization of § 3.6(A) of the New York SIP as similarly a restatement of the CAA's goal to attain the NAAQS for carbon monoxide is not frivolous. Section 3.6(A) is clearly designed to facilitate compliance with the NAAQS. However, whereas § 3.5.3 states no more than that all hot spots shall be eliminated by December 31, 1987, the statutory deadline for carbon monoxide, § 3.6(A) commits the City to take affirmative, although unspecified, steps to achieve the standard.[11] As the district court in *Wilder* stated, § 3.6(A) "contains and constitutes the commitment by the City to assure the necessary mitigation measures." 659 F.Supp. at 1507.

The district court in *Wilder,* confronted with claims arising under both § 3.6(A) and § 3.5.3 of the SIP, implicitly found that the difference in language of the two provisions compelled different conclusions as to whether one or the other fell within the scope of the citizen suit provision of the Clean Air Act. The court held that the first claim of the *Wilder* complaint, alleging a violation of § 3.5.3, was deficient in part because it failed "to reach to the relevant issue," namely the City's commitment "to mitigating measures so as to ensure compliance with the carbon monoxide standard." 659 F.Supp. at 1506.

However, the second claim, premised as is the count at issue in this motion on the City's commitment to mitigation measures, was not rejected as a restatement of an Act goal. Instead, the *Wilder* district court implicitly held that a legally sufficient claim could be made for violation of § 3.6(A):

> In order to assert a legally sufficient claim for violation of this SIP provision, it would be necessary to allege a repudiation by the City of its commitment or a failure of the City to fulfill its commitment. Also, these allegations would need to be related to the specific items

---

10. Reply Memorandum at 12.

11. ATURA interprets the provision as committing the City to a three step process, the third step being the one violated: First, the City is to use the EIS process to analyze the air quality data. Second, the City is to determine whether there are existing or potential violations of the air quality. Third, if the evaluation reveals violations, the City is to adopt mitigation measures adequate to bring the area into compliance.

which can be the subject of a citizen suit under the Clean Air Act—i.e., transportation-control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements. The allegations would need to be made with particularity.

659 F.Supp. at 1507 (citation omitted). The reason the district court ultimately dismissed *Wilder's* second claim was because the allegation that the City had violated § 3.6(A) was unsupported. The Board of Estimate findings indicated the City's commitment to, rather than repudiation of, the mitigation measures; the Department of Transportation's possible modification of one of the traffic control measures could not be construed as a repudiation of the City's commitment to mitigation; and the proposed mitigation measures had been held adequate in state court proceedings to prevent violation of the carbon monoxide standard. *Id.* at 1507–09.

Thus, *Wilder* did not hold that an alleged violation of § 3.6(A) cannot constitute the basis for a citizen suit. Instead, the district court indicated that an allegation that the City had repudiated or failed to fulfill the commitment to provide for attainment of the carbon monoxide standard could support a legally sufficient claim. Moreover, nothing in the Court of Appeals' decision nor in the Second Circuit cases cited by defendants supports a persuasive argument to the contrary.

On appeal, the Second Circuit affirmed the district court's dismissal of claim two, but without commenting whether an alleged violation of § 3.6(A) could be construed as a violation of a specific strategy or commitment. The Court of Appeals simply held that collateral estoppel ruled out count two because an earlier "state court judgment establishe[d] the sufficiency of the EIS process and the adequacy of the mitigation measures." 854 F.2d at 621.

In addition, *Action for Rational Transit v. West Side Highway*, 699 F.2d 614 (2d Cir.1983), upon which the defendants rely, is distinguishable. There the court found that the plaintiffs sought "not relief from violations of the existing SIP so much as revisions of the SIP by way of relief to make that document conform to [plaintiffs'] notion of proper environmental policy." *Id.* at 616. In the case at hand, even the moving defendants do not contend that ATURA, through its claims, seeks to revise the New York SIP.

Accordingly, although the municipal defendants' argument on this motion has virtue, I conclude, as did Judge Griesa in *Wilder,* that a legally sufficient claim for violation of § 3.6(A) can be made (and has been in this case). The language of § 3.6(A) contains a commitment on the part of the City to act, and thereby does more than restate a goal. Moreover, policy considerations urge this conclusion. Were § 3.6(A) and other similar provisions not considered specific strategies, states could easily construct SIPs specific enough to satisfy the CAA requirements, with commitments to comply, but sufficiently general to thwart citizen suits.

\* \* \* \* \* \*

Although count one of ATURA's complaint in the case at hand is not insufficient simply because it is premised on § 3.6(A) of the SIP, the municipal defendants' arguments and the standard of *Wilder* pose two further questions. First, has ATURA alleged a failure to commit to implementation of effective mitigation related to specific items that can be the subject of a Clean Air Act citizen suit? Second, are the plaintiffs' allegations sufficiently particular?

■ As to the first, as in *Wilder,* "there is no allegation [in the complaint] of any act or omission of the City in relation to the items specified in the citizen suit provision." 659 F.Supp. at 1500. It is true that a review of the FEIS and of plaintiffs' Memorandum in Opposition indicate that ATURA is alleging a failure of the defendants to comply with "a condition or requirement relating to transportation measures" within the meaning of 42 U.S.C. § 7604(f)(3); the proposed mitigation measures and refinements involved traffic control measures. However, the specific item to which the mitigation is related should be stated in the complaint. Plaintiffs are in-

structed to amend the complaint accordingly within 45 days.

 As to the second question, the plaintiffs' allegations in the complaint essentially reiterate the SIP provision upon which they rely. However, because § 3.6(A) does no more than require the City to act to ensure adequate mitigation measures, without specifying what those measures are, the SIP's language limits the amount of detail plaintiffs can provide. In *Wilder*, the district court held inadequate plaintiffs' statement that "the City's commitment 'does not include mitigation measures which are effective to achieve' the necessary air quality standard," because it included no "specific allegation of any particular act or omission of any kind on the part of the City." 659 F.Supp. at 1507. ATURA's complaint is more particular. It specifies the manner in which the municipal defendants have failed to satisfy § 3.6(A) of the SIP, by including in the pleadings the FEIS statements that the present measures were inadequate and that the City would explore and adopt measures to ensure compliance, and by alleging that the City has failed to fulfill that promise.

By so doing, plaintiffs in the case at hand have satisfied the particularity requirement. They have stated with "particularity the respects in which compliance with the provisions is deficient," thereby distinguishing the case at hand from *Council of Commuter Organizations v. Metropolitan Transp.*, 683 F.2d 663, 670–71 (2d Cir.1982), in which plaintiffs' claims were dismissed because the pleadings made only general allegations followed by citations to relevant pages of the SIP. ATURA, in contrast, has identified "the specific strategies [namely § 3.6(A)] designed to achieve [the statutory requirement]" and given "some idea of the manner in which the state has failed to comply with the SIP," by alleging the state's failure to adopt adequate mitigation measures. *Id.*

Finally, the stay of discovery, imposed at the request of the defendants pending determination of this motion is lifted.

\*   \*   \*   \*   \*   \*

The municipal defendants' motion to dismiss count one for lack of subject matter jurisdiction is denied, on condition that plaintiffs amend the complaint within 45 days to specify, within the meaning of 42 U.S.C. § 7604(f)(3), the item to which the mitigation is related.

It is so ordered.