**Arthur W. BROWN, Receiver of Prudential Building and Loan Association, Plaintiff-Appellant,**

v.

**COMMONWEALTH OF KENTUCKY et al., Defendants-Appellees.**

No. 74–1347.

United States Court of Appeals, Sixth Circuit.

April 2, 1975.

334

Arthur W. Grafton, Stuart E. Lampe, James N. Williams, Jr. (argued), Parker W. Duncan, Jr., Louisville, Ky., for plaintiff-appellant.

William J. Brown, William Compton, Columbus, Ohio, for state of Ohio, amicus curiae.

Ed W. Hancock, Atty. Gen. of Ky., G. Edward James, James M. Ringo (argued), Robert E. Hatton, Frankfort, Ky., W. Scott Miller, Jr., Merritt S. Deitz, Jr., Louisville, Ky., William E. Scent, Hopkinsville, Ky., Leon J. Shaikun, Frank A. Logan, Frank E. Haddad, Jr., Louisville, Ky., for defendants-appellees.

Smith & Schnacke, Dayton, Ohio, for amicus curiae.

Before MILLER, LIVELY and ENGEL, Circuit Judges.

PER CURIAM.

This appeal presents the sole issue of whether the Eleventh Amendment[1] to the Constitution protects the Commonwealth of Kentucky from suit by one of its citizens[2] for damages resulting from alleged violations by its officials of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, Rule 10b–5, 17 C.F.R. 240.10b–5 and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q.[3] The District Court held that

---

1. The Eleventh Amendment provides:

   "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State".

2. The language of the Amendment has consistently been construed to bar suits by the state's own citizens as well as citizens of other states. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Employees v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

3. Section 17 of the Securities Act of 1933 provides:

   § 77q. *Fraudulent interstate transactions*
   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

   (b) It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

such a suit against the state was barred and dismissed the action against the Commonwealth accordingly. We affirm.

Plaintiff Arthur W. Brown was appointed by the Jefferson County Circuit Judge as a Receiver of Prudential Building and Loan Association, an insolvent Louisville savings and loan association organized under Kentucky law. Plaintiff sought to recover for the Association's members, creditors and depositors some $23,000,000 in damages, charging that this amount was lost through the fraudulent or grossly negligent failure of the Commissioner of Banking and Securities and certain named loan examiners employed by that department to discover the mismanagement and unlawful self-dealings of the president and certain officers of the Association over a four year period.

Under Kentucky Revised Statutes 289.710, the Commissioner of Banking and Securities, or an examiner, is required annually and without notice to "make a thorough examination into the condition, workings and affairs of the association", K.R.S. 289.710(1), and to "report any violation of law or any unauthorized or unfit practices or any failure to keep and have correct amounts of business of the association . . .", K.R.S. 289.710(2). The complaint specifically alleged that one of the state loan examiners indirectly accepted payments from Prudential for services purportedly performed by the examiner's wife in violation of K.R.S. 289.690. That statute forbids an examiner, directly or indirect-

ly, from receiving any payment, compensation or gratuity from any association. It was further charged that " . . . no reasonable person could have made any kind of examination of Prudential without discovering and reporting the many improper and illegal acts and omissions of Prudential management". Accordingly, it was alleged, by such gross neglect of its statutory duty to inspect, the Commonwealth permitted the Association to become insolvent.

In Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), the Supreme Court held that capital shares of a state chartered savings and loan association are "securities" within the meaning of Section 10(b) of the Securities Exchange Act of 1934. On this basis, plaintiff claimed that the failure to discover and disclose the insolvency of the Association amounted to "a failure to disclose under the Exchange Act" warranting the invocation of the District Court's federal question jurisdiction, 28 U.S.C. §§ 1331, 1337, 15 U.S.C. §§ 78aa and 77v.

In Parden v. Terminal R. Co.; 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) the Supreme Court held that by its operation of a common carrier railroad in interstate commerce, the State of Alabama waived its sovereign immunity and consented to a suit brought in federal court by employees of the railroad under the Federal Employers' Liability Act. While observing that "It remains the law that a State may not be sued by an individual without its consent", 377 U.S.

(c) The exemptions provided in section 77c of this title shall not apply to the provisions of this section.
May 27, 1933, c. 38, Title I, § 17, 48 Stat. 84; Aug. 10, 1954, c. 667, Title I, § 10, 68 Stat. 686.

Section 10(b) of the Securities Exchange Act of 1934 provides:
§ 78j. *Manipulative and deceptive devices*
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(a) To effect a short sale, or to use or employ any stop-loss order in connection

with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
June 6, 1934, c. 404, § 10, 48 Stat. 891.

at 192, 84 S.Ct. at 1213, *Parden* nevertheless held that consent was necessarily granted by Alabama when it entered into the interstate railroad business approximately 20 years after the enactment of the FELA. In like manner, urges the receiver here, in the 1933 and 1934 Acts "Congress has enacted a comprehensive scheme of laws regulating the sales of securities and has given exclusive jurisdiction to the federal courts to hear such actions". Thus, he argues, by interposing itself completely in the affairs of Prudential and hence, at least since *Tcherepnin*, a sphere of activity subject to concurrent federal regulation, the Commonwealth of Kentucky must therefore be deemed to have waived its immunity to suit.

Whatever doubts may have been raised concerning the continuing viability of the immunity doctrine under the Eleventh Amendment after Parden v. Terminal R. Co., *supra*, have been since laid to rest by Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) and Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As pointed out in *Edelman*, "The question of waiver or consent under the Eleventh Amendment was found in those cases (*Parden, Employees* and other citations therein) to turn on whether Congress had intended to abrogate the immunity in question, and whether the State by its participation in the program authorized by Congress had in effect consented to the abrogation of that immunity." Edelman v. Jordan, *supra*, at 672, 94 S.Ct. at 1360.

Our examination of both the Securities Act of 1933 and the Securities Exchange Act of 1934 totally fails to reveal "a purpose of Congress to make it possible for a citizen of that State or another State to sue the State in the federal courts." Employees v. Missouri Public Health Dept., *supra*, 411 U.S. at 285, 93

S.Ct. at 1618. Here the statutory duty imposed upon the Kentucky Commissioner of Banking and Securities cannot in any way be construed as the exercise of a proprietary function, but is rather clearly the exercise of a regulatory function of the state over its own chartered institutions which has been historically exercised as part of its governmental powers. There is nothing to suggest that either federal act was intended to be or should be construed either to divest the Commonwealth of Kentucky of the power to regulate its state chartered institutions or beyond that, to do so only upon condition of its consent to be sued by one of its own citizens if that power is for any reason improperly exercised. Edelman v. Jordan, *supra*, made it manifestly clear that:

> Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language, or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

In this case, plaintiff has sought money damages from the Commonwealth itself. No injunctive or other merely prospective relief has been sought. Cf. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Recovery, if any, will come from the state treasury. This, we think, is the clearest type of case in which the Eleventh Amendment bar against suit protects the state. Accordingly, since we find no waiver of the Amendment, the judgment dismissing the Commonwealth of Kentucky as a defendant in the above entitled cause is affirmed. Costs to appellees.