**CHARTER OAK FEDERAL SAVINGS BANK, Plaintiff,**

v.

**STATE OF OHIO, et al., Defendants.**

**Civ. No. C–1–86–0715.**

United States District Court, S.D. Ohio, W.D.

May 18, 1987.

Gene Mesh, Cincinnati, Ohio, for plaintiff.

Kathleen McManus, Philip Brown, Columbus, Ohio, Roger Makley, Dayton, Ohio, David Bodiker, Columbus, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on the State of Ohio's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (doc. 14), as well as on requests for dismissal from the eighteen remaining state defendants in this action. Plaintiff filed a motion in opposition to dismissal (doc. 24) to which defendants replied. (doc. 26).

Plaintiff's predecessor, Charter Oak Savings Association, was an Ohio building and loan association subject to state regulation pursuant to Ohio Rev. Code chapter 1151 and Title 17. Charter Oak Savings was one of seventy state building and loan associations that also were members of the Ohio Deposit Guarantee Fund (hereinafter "ODGF,") a private, non-profit corporation organized under Ohio Rev.Code sections 1151.80 to 1151.92, in order to assure the liquidity of the member associations and to guarantee the deposits. *See State ex rel. Celeste v. Smith*, 17 Ohio St.3d 163, 478 N.E.2d 763 (1985). In order to perform this purpose, ODGF required each member association to maintain deposits in the fund which equaled two percent of the deposit liabilities of such member.

In March, 1985, Home State Savings Bank, a member of ODGF, became financially insolvent. As a result of Home State Savings Bank's collapse, the State of Ohio's Superintendent of Savings and Loan Associations on March 20, 1985, appointed a conservator for ODGF pursuant to Ohio Rev.Code 1157.01(A) and on April 12, 1985, the Superintendent began liquidation proceedings in the Court of Common Pleas of Hamilton County. Ultimately, ODGF was required to pay over $81 million for the benefit of Home State Savings Bank depositors. As a result of this payover, Charter Oak Savings Association alleges it lost the following: a $6.5 million certificate of deposit in ODGF and $126 million in connection with the collapse of Home State Savings Bank, which includes a $45 million unsecured advance made to Home State Savings Bank immediately before its collapse and $81 million paid by ODGF to the purchaser of Home State Savings Bank (complaint, par. 77, 78). Plaintiff further claims it lost its $3 million proportional interest in the reserve fund and suffered a run on deposits between March 5 and March 15, 1985. (Complaint, par. 81, 83).

Charter Oak Savings Association contends the State of Ohio defendants failed to properly regulate Home State Savings Bank and ODGF, failed to disclose the failing condition of Home State Savings and failed to disclose to Charter Oak Savings Association that its deposits were not

backed by the full faith and credit of the State of Ohio.

Plaintiff alleges that these acts or omissions by the state constitute a violation of, or aided or abetted violations of, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. section 78j, and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. 240.10b–5. The complaint also includes allegations of Section 20(a) violations of the Securities Exchange Act and pendent common law claims.

Named in the suit are the State of Ohio, Division of Savings and Loan Associations, Connie J. Harris, superintendent; three former state superintendents; the ODGF; and 14 present or former ODGF officials. All individuals are sued in their official capacities.

Plaintiff asserts the Court has federal question jurisdiction in this case, while the state defendants maintain the Court lacks jurisdiction over the subject matter, due to the immunity provided by the eleventh amendment to the United States Constitution. For the reasons below, defendants' motions to dismiss pursuant to Fed.R.Civ. Pro. 12(b)(1) are granted.

## DISCUSSION

Defendants claim immunity from suit in federal court based on the eleventh amendment to the United States Constitution which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The amendment has been judicially extended to bar a citizen from bringing suit against his own state in federal court. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This bar remains in effect when state officials are sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

The Supreme Court has observed the reason a state generally may not be brought into federal court against its will is that states of the Union still possess attributes of sovereignty "... save where there has been 'a surrender of the immunity in the plan of the [constitutional] convention.'" *Principality of Monoco v. Mississippi*, 292 U.S. 313, 322–23, 54 S.Ct. 745, 747–48, 78 L.Ed. 1282 (1934) (footnote omitted), quoting *The Federalist*, No. 81. "The Constitution never would have been ratified if the States and their courts were to be stripped of their sovereign authority except as expressly provided by the Constitution itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 n. 2, 105 S.Ct. 3142, 3146 n. 2, 87 L.Ed.2d 171 (1985).

As a consequence, the eleventh amendment forbids damage suits against a state in federal court, with two exceptions. *Id.* at 238, 105 S.Ct. at 3146. First, Congress may abrogate the states' eleventh amendment immunity. *Id.* Second, a state may consent to damage suits against it in the federal forum, thereby waiving its eleventh amendment immunity. *Id.* Plaintiff Charter Oak Savings Association contends both exceptions apply here and serve to remove defendants' eleventh amendment immunity. The Court will examine both theories against the applicable standard of review for a motion to dismiss. In considering a motion to dismiss for lack of subject matter jurisdiction, the allegations of the complaint should be construed favorably to the pleader. *Ecclesiastical Order of the ISM of AM*, 725 F.2d 398, 403 (6th Cir.1984), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue is not whether a plaintiff ultimately will prevail, but whether the claimant is entitled to offer evidence to support the claims. *Id.*

## I. ABROGATION OF IMMUNITY

Plaintiff contends that Congress abrogated the states' eleventh amendment immunity in the area of securities fraud regulation when it enacted the Securities Act Amendments of 1975, Pub.L. No. 94–29, 89 Stat. 97, (hereinafter "1975 Amendments"). (Doc. 24, p. 2)

Until 1975, governmental entities had been excluded from the definition of "person" under the Securities Exchange Act of 1934, 15 U.S.C. section 78j(b), and only a "person" could be liable for fraudulent practices pursuant to Rule 10b–5.

But in 1975, Section 3(a)(9) expanded the definition of "person" to include the word "government":

The term 'person' means a natural person, company, government, or political subdivision, agency or instrumentality of the government."

15 U.S.C. 78c(a)(9).

Plaintiff maintains that Congress, by enacting the 1975 Amendments, intended to include the states, their agencies and officials in the class of "persons" who may be sued under section 10(b) and Rule 10b–5. Defendants counter that such a definitional amendment is insufficient to constitute a congressional abrogation of the states' eleventh amendment immunity. (Doc. 14, p. 10.)

The first question to be addressed is whether Congress, pursuant to Article I, section 8, the "commerce clause," even has the power to abrogate the states' eleventh amendment immunity. The Securities Exchange Act Amendments of 1975 was enacted pursuant to the commerce clause. The state defendants contend that congressional abrogation only is valid when Congress acts under the fourteenth amendment, not when the legislation is passed pursuant to the commerce clause. (Doc. 14, p. 10). The validity of this contention is unclear.

It is true the Supreme Court has made clear that when Congress acts under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment without the states' consent. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Section 5 gives Congress the "power to enforce ... by appropriate legislation" the substantive provisions of the fourteenth amendment.

But it is unclear whether Congress also may abrogate the states' eleventh amendment immunity by enacting laws pursuant to Congress' Article I powers. *McVey Trucking, Inc. v. Secretary of State of Illinois*, 812 F.2d 311 (7th Cir.1987). (Judges Posner, Flaum and Senior District Judge Campbell comprised the panel.) In *McVey* the United States Court of Appeals for the Seventh Circuit explained that two recent Supreme Court decisions, *Atascadero, supra*, and *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), expressly link the power of Congress to create a cause of action for money damages enforceable against an unconsenting state with Congress' exercise of its power under the fourteenth amendment. *McVey* at p. 314.

The Court's language may reflect the fact that, to date, it has only considered Congress' ability to create a cause of action for money damages enforceable against an unconsenting state in federal court in cases in which Congress has acted under its Fourteenth Amendment power. However, it is also possible that the Court may be indicating that the Fourteenth Amendment is the only grant of power that allows Congress to do so. *Id.* at 315.

*McVey* concerned a debtor's action under the Bankruptcy Code to recover money that it claimed was transferred improperly to the Secretary of State of Illinois. The bankruptcy court dismissed the action, holding that under the eleventh amendment it lacked jurisdiction over the Secretary, and the district court affirmed. In its reversal, the appellate court found that Congress may create a cause of action for money damages enforceable against an unconsenting state in federal court when it acts under its Article I powers, which include the power to establish uniform laws on bankruptcies.

... [B]ecause Congress may create a cause of action for money damages enforceable against an unconsenting state in federal court under its Fourteenth Amendment power, it may do so under any of its plenary powers. *Id.* at 323.

■ The Court notes the recent date of the Seventh Circuit *McVey* opinion and the dearth of case law on this subject in the other circuits. However, for purposes of defendants' motions to dismiss the Court will assume, without deciding, that Congress possesses the power to abrogate the states' eleventh amendment pursuant to the commerce clause. Even assuming Congress possesses such power, the Court finds that Congress did not intend to abrogate the States' eleventh amendment immunity when Congress enacted the 1975 Amendments.

The controlling decisions in this matter arise from the United States Court of Appeals for the Sixth Circuit in *Brown v. Kentucky*, 513 F.2d 333 (6th Cir.1975), *cert. denied*, 423 U.S. 839, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975), and *Yeomans v. Kentucky*, 514 F.2d 993 (1975), *cert. denied*, 423 U.S. 983, 96 S.Ct. 404, 46 L.Ed.2d 309 (1975) and from the Supreme Court case of *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

In *Brown* a court-appointed receiver of a building and loan association sued the Commonwealth of Kentucky and others to recover money damages for defendants' alleged violations of federal securities laws. Plaintiff maintained the Kentucky Commissioner of Banking and Securities and certain state loan examiners were liable under the federal antifraud provisions for "fraudulent or grossly negligent failure" to discover the mismanagement and unlawful self-dealings of the association's president and certain officers. *Brown*, 513 F.2d at 335. The appellate court disagreed.

> Our examination of both the Securities Act of 1933 and the Securities Exchange Act of 1934 totally fails to reveal 'a purpose of Congress to make it possible for a citizen of that State or another State to sue the State in the federal courts.' (Quoting *Employees v. Missouri Public Health Dep't*, 411 U.S. 279, 285 [, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251] (1973)).... There is nothing to suggest that either federal act was intended to be or should be construed either to divest the Commonwealth of Kentucky of the

power to regulate its state chartered institutions.....

*Id.* at 336.

The *Yeomans* case arose from the failure of the Harmony Loan Company of Newport, Kentucky, a company organized to provide loans to finance consumer transactions. The Commonwealth of Kentucky and the State of Ohio regulated Harmony Loan in connection with its sale of securities. Plaintiffs, a group of investors in Harmony Loan, sued the Commonwealth of Kentucky and the State of Ohio alleging federal securities violations that nearly were identical to the charges alleged in *Brown*. *Id.* at 994. The Appellate Court held that *Brown* was controlling.

> Plaintiffs urge that the defendant States, by their failure to properly regulate in accord with state statutes, went beyond regulation and became aiders and abettors or active participants in the fraudulent activities of Harmony Loan.... Regardless of what the specific allegations may be, the complained of activities of the defendant States arose out of the immunity clothed function of governmental regulation of securities.

*Id.* at 995.

The United States Court of Appeals for the Tenth Circuit in *Green v. State of Utah*, 539 F.2d 1266 (1976) adopted the Sixth Circuit's conclusion in *Brown* and *Yeomans* that the eleventh amendment bars a suit for damages based upon a state's alleged violation of federal securities law. In *Green*, holders of thrift certificate passbooks, debenture bonds and thrift certificate issued by a collapsed thrift and loan company instigated a Rule 10b–5 action against the Commissioner of Financial Institutions of the State of Utah and against the State of Utah, which had taken control of the company.

The lawsuit stemmed from the collapse of an industrial loan company organized pursuant to Utah statutes. *Id.* at 1268. As in the case at bar, the plaintiff in *Green* alleged that defendants had violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 by failing to inform

plaintiff of the failed loan company's insolvent condition.

Plaintiff relied upon the 1933 Act definition of "person," 15 U.S.C. section 77b(2), as "a government or political subdivision thereof." Based on the "person" definition, plaintiff argued that Congress intended to remove the State of Utah's eleventh amendment immunity. *Id.* at 1270. The appellate court found the statutory language not express enough to remove eleventh amendment immunity.

The fact that one statute in the Securities Act, 15 U.S.C. section 77b(2) defines *person* to include "a government or political subdivision thereof" does not present the type of indication needed to establish a congressional intent to lift Eleventh Amendment immunity. We do not discern an intent to bring the states to heel. *Id.* at 1274 (no emphasis added).

The Court is not persuaded that Congress' subsequent enactment of the 1975 Amendments, redefining "person" for purposes of securities fraud regulation, moots the appellate court decisions in *Brown, Yeomans* and *Green.* The Supreme Court's decision in *Atascadero* convinces the Court otherwise.

*Atascadero* involved a man blind in one eye who claimed a California state hospital discriminated against him, in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. section 794 (1982), when the hospital denied him employment. The Rehabilitation Act of 1973 conferred a right of action upon handicapped persons who were discriminated against by "any recipient of federal assistance." Plaintiff sought damages from a California state hospital that received federal financial assistance. The Court held that the eleventh amendment barred the suit, despite the inclusive language of the Rehabilitation Act.

The statute thus provides remedies for violations of section 504 by "any recipient of federal assistance." There is no claim here that the State of California is not a recipient of federal aid under the statute. But given their constitutional role, the States are not like any other class of recipients of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically. *Atascadero,* 473 U.S. at 245–246, 105 S.Ct. at 3149.

Before abrogation can be found *Atascadero* teaches that Congress must say in "unmistakable language in the statute itself," *Id.* at 243, 105 S.Ct. at 3148, that Congress authorizes suits against, for example, a "*state* government, governmental agency or political subdivision." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 449 n. 2, 96 S.Ct. 2666, 2668 n. 2, 49 L.Ed.2d 614 (1976). (emphasis added). The Court in *Fitzpatrick* found this language in 42 U.S.C. section 2000e(f) sufficient to abrogate the states' eleventh amendment immunity. However, even in cases where a federal statute has been amended to explicitly include the word "state," the Supreme Court has found no abrogation where there was no evidence of congressional intent on the specific issue of sovereign immunity. In *Employees of Department of Public Health & Welfare v. Missouri Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Supreme Court held that although Congress had amended the Fair Labor Standards Act to include state employers within its scope, the legislation was not clear indication that Congress intended to make possible suits by a citizen of one state against another state in federal court.

The Supreme Court in *Atascadero* directed the federal courts to be certain of Congress' intent before finding that federal law overrides the guarantees of the eleventh amendment. 473 U.S. at 243, 105 S.Ct. at 3148. "The requirement that Congress unequivocally express this intention in the statutory language ensures such certainty." *Id.* The United States Court of Appeals for the Third Circuit explained that abrogation requires a showing of "plain intent" rather than merely "plain meaning." *United States v. Union Gas Co.,* 792 F.2d 372, 376 n. 6 (3rd Cir.1986).

Even a statute whose natural reading would allow for suits against the state—indeed a statute for which any other reading may be awkward—may not suffice. The [Supreme] Court has insisted that the statute, when read literally, not merely allow suits against the state, but that it do so with such specificity that it is clear that Congress consciously and directly focused on the issue of state sovereign immunity and chose to abrogate it.

It may be that after *Atascadero* abrogation always must be expressed literally in the statute and no longer may be determined from legislative history. *United States v. Union Gas. Co.*, 792 F.2d 372, 378 (3rd Cir.1986), citing *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). However, if abrogation still may be inferred in special circumstances, the evidence in favor of such an interpretation must be "virtually overwhelming." *Union Gas Co.*, 792 F.2d at 378. The Court finds no such overwhelming evidence in the legislative history of the 1975 Amendments.

Further, there could be a plausible interpretation of the amended section that did not require abrogation of the eleventh amendment. *Employees*, 411 U.S. at 285–286, 93 S.Ct. at 1618. Pursuant to the amended section, the United States can initiate actions for federal securities fraud, as the Securities and Exchange Commission has broad remedial powers in enforcement actions charging violations of section 10(b) and Rule 10b–5, *S.E.C. v. Materia*, 745 F.2d 197, 200 (2nd Cir.1984) *cert. denied* 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985), and suits by the United States against states are not barred by the eleventh amendment. *United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965). The provisions for SEC actions against a state for violations of the securities laws militate against viewing the 1975 Amendments as abrogating the states' immunity. In *Employees*, 411 U.S. at 286, 93 S.Ct. at 1618, the Court found the policy of the Fair Labor Standards Act so far as the states are concerned "wholly served by allowing the delicate federal-state relationship to be managed through the Secretary of Labor."

In any event, the Court cannot conclude that a reasonable construction of this provision includes states within the defined class. The 1975 amendment of the definition of "person" under the 1934 Act to include a government or political subdivision, agency, or instrumentality of government, does not constitute clear indication of congressional intent to subject states to actions in federal courts for violations of the antifraud provisions.

The Court fails to find an unequivocal expression by Congress that it "consciously and directly focused on the issue of state sovereign immunity and chose to abrogate it." *Union Gas*, 792 F.2d at 376. Absent is specific statutory language identifying states as members of the class created by section 3(a)(9) of the 1975 amendments, which expanded the definition of those who could be liable for fraudulent practices pursuant to Rule 10b–5. As in *Atascadero*, the statute places liability on a general class of potential defendants. The word "state" never is mentioned. Without the requisite specificity, the eleventh amendment bars this federal statute from serving as a net to bring immunized state governments into its catch.

## II. CONSENT TO SUIT

▪ Plaintiff urges that even if the eleventh amendment immunizes defendants from suit, defendants have consented to suit in federal court by implicitly waiving their eleventh amendment immunity. Defendants' actions constituted implicit waiver, plaintiff maintains. "... [T]he State and its officials were so deeply involved in the affairs of the ODGF, and so knowingly 'helpful' to the ODGF in its endeavors, that the State appeared to be the insurer of the deposits." (doc. 24, p. 5). Plaintiff essentially is arguing that entry by the State of Ohio, in its regulatory capacity, into the congressionally regulated area of securities constituted an implied waiver of immunity.

Plaintiff relies upon the Second Circuit case of *Forman v. Community Services, Inc.*, 500 F.2d 1246, 1256 (2d Cir.1974), *rev.*

*on other grounds*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), where the appellate court determined the State of New York implicitly waived its eleventh amendment immunity from suit in federal court for violations of the federal securities laws.[1]

*Forman* concerned the creation of a nonprofit cooperative housing corporation in New York City, which was state-financed and supervised. New York's Mitchell-Lama Act authorized the defendant New York State Housing Finance Agency to provide the bulk of the financing for the project through long-term, low-interest mortgage loans and another state agency was responsible for the supervision, construction, promotion and operation of the project. *Forman*, 366 F.Supp. 1117 (S.D. N.Y.1973), rev'd, 500 F.2d 1246 (2d Cir. 1974), rev'd 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

Plaintiffs in *Forman* claimed there were misrepresentations and material omissions in "Information Bulletins" circulated through the mail which stated estimated average monthly charging charges. The cost of the project increased while it was being built, resulting in carrying charges that were most serious for persons on fixed incomes or whose wages had not increased with inflation. *Forman*, 500 F.2d at 1250. The appellate court explained its preemption holding.

> The State has waived its sovereign immunity with respect to federal securities laws violations by voluntarily entering a field under federal regulation. *See Parden v. Terminal Railway of Alabama Docks Department* [, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233] (citations excluded). Thus when the State enacted the Mitchell-Lama Act in 1955 and codified it in 1961, it did so with the knowledge that transactions involving subscriptions for stock solicited through the mails were already within the ambit of federal antifraud regulations and statutes.... Were there any doubt that the securities laws were intended to reach

states or their agencies, the legislative history dispels it.
> *Id.* at 1256.

This Court declines to follow *Forman* and adheres instead to the holdings on implicit waiver by the United States Court of Appeals for the Sixth Circuit in *Brown v. Kentucky*, 513 F.2d 333 (6th Cir.1975), and *Yeomans v. Kentucky*, 514 F.2d 993 (1975).

As in the case at bar, *Brown* and *Yeomans* concerned a state's potential liability under the federal securities laws following the failures of state-regulated financial institutions. The appellate court in both cases rejected plaintiffs' implied waiver arguments and upheld the district courts' dismissals based on the eleventh amendment.

In *Brown* the plaintiff similiarly alleged that the Commonwealth of Kentucky, by interposing itself in the affairs of the building and loan association, had waived its eleventh amendment immunity to suit. 513 F.2d at 335. The appellate court disagreed, holding that the Commonwealth's regulation of the association did not constitute waiver. "This, we think, is the clearest type of case in which the Eleventh Amendment bar against suit protects the state." *Id.* at 336. In *Yeomans* the appellate court rejected plaintiffs' waiver argument that entry by a state, in its regulatory capacity, into the congressionally regulated area of securities constitutes an implied waiver of immunity. *Yeomans*, 514 F.2d at 994. The United States Court of Appeals for the Tenth Circuit in *Green*, 539 F.2d at 1273, also rejected *Forman's* implicit waiver holding and adopted the Sixth Circuit's determination in *Brown* and *Yeomans*. The Court in *Green* explained the actions by the State of Utah defendants were part of the state's clearly governmental function of regulating state-chartered commercial institutions. *Green*, 539 F.2d at 1274.

As examples of the State of Ohio's regulatory duties, plaintiff notes that the state, pursuant to Titles 1 and 11 of the Ohio Revised Code, supervised and regulated Ohio Building and Loan Associations and the ODGF. (Complaint, par. 40–45). Pur-

---

1. The Supreme Court reversed *Forman* on the ground that the shares were not securities subject to regulation and it did not reach the Second Circuit's preemption holding.

suant to various statutes, the state required ODGF to file semi-annual financial reports with the Superintendent of Building and Loan Associations, examined the semi-annual financial reports of ODGF, made annual examinations of ODGF and had the right to conduct special examinations whenever the state deemed it necessary. Further, the Division of Savings and Loan Association, also pursuant to statutory mandate, made annual examinations of the member associations. (Complaint, par. 45). In plaintiff's complaint, the ODGF logo, depicting the outline of the State of Ohio and stating "all savings guaranteed in full," is offered as one example of the state's alleged misrepresentations and omissions and its deep involvement in the industry. (Complaint, par. 70).

The Court finds that regardless of what the specific allegations may be, the complained of activities of the state defendants arose out of the immunity-clothed function of governmental regulation of securities. *Yeomans*, 514 F.2d at 995. Defendants were engaged in clearly governmental duties of regulating state-chartered commercial institutions, even if those duties were improperly exercised. *Brown*, 513 F.2d at 336.

■ Plaintiff's reliance on *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), is misplaced, as the state never intruded into the federal ambit of securities fraud regulation. Further, plaintiff ignores the series of later cases that seriously eroded *Parden. See Employees v. Department of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). ("... The dramatic circumstances of the *Parden* case, which involved a rather isolated state activity, can be put to one side."); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The state serves as a regulator of commercial institutions in countless scenarios and the fact that this scenario involved a high-profile, financial crisis does not persuade the court to infer eleventh amendment immunity has been lost. The Supreme Court has made clear that waiver is

not to be easily inferred in these cases. "Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights ..." *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360.

More recently the Supreme Court in *Atascadero* ruled that in order for a state to effect waiver, "we require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Atascadero*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1. Defendants' regulatory actions do not constitute the kind of unequivocal waiver the Supreme Court demands.

■ Plaintiff's remaining implicit waiver argument, based on the equal protection of the laws, also fails.

This argument centers on the state's issuance of $100 million to the Depositor Assistance Corporation in the midst of the savings and loan crisis. Am.Sub.H.B. 492, 116th Gen. A., eff. June 22, 1985. The $100 million, which defendants categorize as a secured loan, supplemented the $81 million in ODGF funds needed to carry out the Home State rescue. Because plaintiff allegedly was injured by the same actions or inaction, by the same state defendants, plaintiff contends the equal protection clause of the fourteenth amendment forbids the state from denying similar relief to Plaintiff.

The dispositive case on this equal protection challenge is *Edelman v. Jordan*, 415 U.S. 651, 653 n. 1, 94 S.Ct. 1347, 1351 n. 1, 39 L.Ed.2d 662 (1974), where the Court upheld the eleventh amendment bar against allegations of unequal treatment. The plaintiff in *Edelman* alleged that state officials' refusal to process and to allow the plaintiffs' claims, while processing and allowing claims of other persons similarly situated, violated equal protection. The Supreme Court held that plaintiff's contention failed to surmount the eleventh amendment bar against private parties seeking to impose a liability which must be paid from public funds in the state treasury. *Id.* at 663, 94 S.Ct. at 1355.

## CONCLUSION

The eleventh amendment to the U.S. Constitution bars this damage action in federal court. Plaintiff, a private party, sued the State of Ohio and certain state officials in their official capacities, seeking money damages to be paid directly from the state treasury. The eleventh amendment was passed to protect the states against exactly this type of federal court litigation. The exceptions to eleventh amendment immunity are inapplicable, as Congress neither abrogated the states' eleventh amendment immunity for violations of the antifraud provisions, nor has plaintiff established that defendants consented to suit by waiving their immunity. Accordingly, plaintiff is not entitled to offer evidence to support its claims, *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686, and this matter is hereby dismissed pursuant to Fed.R.Civ.Pro. 12(b)(1) for lack of subject matter jurisdiction.

IT IS SO ORDERED.